Good morning. Good morning. May it please the Court, Gerald Serlin and my co-counsel, Wendy Albers, on behalf of Defendant and Appellant Alexander Marine. At the outset, I'd like to note that I'd like to reserve five minutes for reply. Certainly. Thank you. I'll try to help you by reminding you, but please keep your eye on the clock yourself as well. I will do so. Today I'm here just to emphasize some of the points that we've articulated in our opening and reply briefs. Initially, we've argued that the civil penalties were improperly imposed. As this Court has seen under the Song-Beverly Act, you cannot impose civil penalties on the basis of an implied warranty. What did the District Court say regarding that? Didn't the District Court found that to be waived? Well, the Court actually addressed the issue. And what the Court said is this. The jury's failure to find a breach of an expressed warranty under Song-Beverly did not preclude a civil penalty because the jury found a breach of the expressed warranty under the commercial code. So assume it wasn't waived for a second. But, well, actually, tell Judge your view is it wasn't waived because the Court addressed it on the merits. That's correct. Okay. So now let's get to the merits. And I'm looking at Song-Beverly. Subsection A says any buyer of consumer goods. I have no idea why a yacht is consumer goods, but you guys all seem to think it is. Who is damaged by a failure to comply with any obligation under this chapter or under an express or implied warranty. So do you agree that subsection A covers express or implied warranties that are not an obligation under the chapter? It does cover express warranties. Right. I'm not talking about the penalty provision for a moment. I'm just talking about subsection A. Subsection A says you may bring an action for recovery of damages if you're damaged by a failure to comply with any obligation under this chapter. Those, I think, would be Song-Beverly warranties. Correct. Or under an express or implied warranty. So does subsection A give a right to recover for violation of non-Song-Beverly express warranties? What the Song-Beverly Act imposes, creates an obligation for is written warranties that are set forth. Yeah, that was my question. I understand, Your Honor, but so it does, it can certainly cover warranties that are imposed by non-Song-Beverly. Okay. Now we get to subsection C and put aside all the exceptions. Subsection C begins, if the buyer establishes that the failure to comply was willful. And the only other place I find a failure to comply is back in A. So why doesn't every failure to comply, except those accepted under C, give rise to a penalty under C? You see what I'm saying? The reference is to a failure to comply, and the failure to comply in A, which begins the statute, says not only under this statute, but with any other express warranty. Therein lies the difference. If you look at the express warranties that are available under Song-Beverly, and you juxtapose it with warranties that are available under the commercial code, they're different. I agree. No, I agree. And I agree that, in this case, the jury did not find an express warranty violation under Song-Beverly. Right. They did find one under the UCC. But the UCC is much broader. If you look at the UCC, you'll note that it – Can I just say, Judge Horowitz's point is that if A covers express warranties under the UCC, and it even goes beyond that, it covers service contracts, why wouldn't C cover the same thing? It would cover potentially express warranties under different provisions, including the UCC. And so it seems to me, legislative history aside and everything else, if you just read this statute, I always hate to use the word plain language, but the language of the statute says you have causes of action for certain failures to comply, and among them are breaches of express warranties both under this statute and outside this statute. And then we have later a penalty that says if you've established that failure to comply, you get a penalty except for implied warranties. So why isn't your case just sort of squarely covered by this statute? I don't think it does for two separate reasons. First of all, the punitive damages are not available under the commercial code. And the – Before the statute was passed. I mean, we all agree that the commercial code just doesn't provide for punitive damages. The question is whether this statute provides for punitive damages for violations of the commercial code. It's a subsequent statute. The Song-Beverly Act both incorporates and supplements the remedies that are available under the commercial code, certainly. But the commercial code does not incorporate the provisions of the Song-Beverly. And so what the – But that ends up being a circular argument. I'm still not quite clear if I understand your answer to my colleague's question. If you're conceding that A potentially covers express warranties under the UCC or other than Song-Beverly, then why doesn't C apply? What I've tried to explain, and I'd like to get to that again, is under the commercial code, you have a warranty violation if there's an express warranty, or alternatively, if there's some sort of statement or promise that can be extracted from any realm in addition to the express warranties provided with the product. And those are implied warranties. And here, the jury found that there was no express violation of the warranty provided by Alexander Marin. No, no. The jury found, as I understand it – maybe you can enlighten me. I thought the jury found there was no violation of a Song-Beverly warranty, but there was a violation of the express warranty of an express warranty. Sure. The jury did find that there was a violation of the express warranty under the commercial code. Right. But that violation could have been based on an oral statement, could have been based on materials other than the warranty that was actually provided. Well, it could have, but certainly there was substantial evidence in front of us from which we can conclude that the jury had a basis for determining it was based on the warranty in the agreement. Well, actually, to the contrary, Your Honor. You have two rulings, two findings by the jury, that the express warranty doesn't apply based on Song-Beverly, and the express warranty does apply under the commercial code. Can I rephrase this for you? Sure. The jury found that there was no Song-Beverly express warranty, right? But it found that there was an express warranty under the commercial code. No, but then if you take this back then to the instructions themselves, you see that there is a potential overlap, but the jury's findings actually excluded the possibility of a finding under the warranty that was actually provided. Tell me how they did that. What findings do we have other than no Song-Beverly but UCC? The jury was instructed as follows under instruction number 14. Plaintiffs, this is the question as stated in the instructions, plaintiffs claimed that they were harmed by defendants' breach of a warranty that the JB2, the yacht, was built to ABS standards. So we're talking about an express warranty, one that was provided by Alexander Marine. By contrast, if you look at instruction number 17, which is the warranty under the commercial code, you look and see that it covers where plaintiffs claimed they were harmed by defendant Alexander Marine's words or actions that the JB2 was built to ABS standards. And so words or actions are available under commercial code, which the jury apparently found to be so, but they found that liability wasn't properly imposed under the Song-Beverly. So let me understand your argument here because it's not the way I understood it before. So your argument is that subsection A doesn't cover UCC warranties to the extent that they're not in—express warranties to the extent they're not in writing? Yes, that's correct. And what do you base that? That was my understanding. Is there a case that you'd like us to look at for that proposition? I would be glad to provide that if given the opportunity. It's been fully briefed, and I haven't seen a case that really stands for that proposition. Let me see if I can get this straight. You're saying that A doesn't cover implied warranties? What we're saying is that under the Song-Beverly Act, you cannot get civil penalties for— For nonwritten warranties? For not in express warranties. No, but we all agree as to that. So let me give you an example because I think it is a different argument. It's a new argument to me from what was in the briefs. Let's assume I orally warrant to you something. Understood. And I violate that warranty. And my obligation is to fix it. And you're saying that's not covered by A? I don't believe it is, Your Honor. Well, in the language it says an implied or express warranty. So why can't an express warranty be oral? That's why I'm looking for some authority because it strikes me as a new argument as well. I do not have authority at my fingertips, and I would need to provide that to the court. All right. Let me have you move on because you've got less than five minutes that you'd like to reserve. But I do want you to answer this question with regard to the collateral source rule. If we agree with you that that instruction was given in error, can you briefly explain why that impacts liability and not just damages? Yes, Your Honor. There are two reasons that we've set forth. First, the fact that there was collision damage of $350,000. This validated Alexander Marine's contention that the JB2. But my question to you is, so what? Didn't the jury hear all of the evidence that you would have presented other than the number itself? Other than the dollar amount, didn't you make all of these arguments? Or at least you weren't precluded from making all of these arguments. So why do you get another trial on liability? I think what it did show is that the insurance company, when they made the $350,000 payment, it validated that, indeed, the damages were caused by the collision. Right. But that's a separate issue from the one you're talking about. I've got another question for you on this topic. But Judge Wynn's asking a very simple question. You got to tell the jury that there was insurance. You got to tell the jury that they could receive everything but the dollar amount. Everything but the number. So if you're right, don't we just reduce the damage award by $300,000? No, Your Honor. I believe that you do actually have to remand it for a new trial because there was tremendous divergence in the evidence, even from the plaintiffs themselves. According to the plaintiffs. But that's not the key inquiry, though. You know, the jury gets to make these determinations. They get to weigh the conflicting evidence and decide who to believe and disbelieve. The question really is, if the court had made an error and we were to remand it for a new trial, what would you present that's different from the first time around? That's one way to do it, so you just give them the number. Right? Is there something more that you would give them other than the number? The jury, if they had heard that there was $350,000 paid by an insurance company, it would have absolutely validated our contention. That's not the question Judge Wynn asked. The question she asked is if there were a new trial. To put it differently, if the judge had ruled the way you thought he should have ruled on the case below, you only would have gotten to tell the jury about the number, right? We would have gotten to tell the jury that an insurance company had paid $350,000. So the answer to my question is yes. Yes, Your Honor. Just the number. Just the number is the difference. You got to tell the jury that the insurance company had paid a claim on this. You got to tell them that they had insurance. All you didn't get to tell them was the number, correct? We were not allowed to mention insurance at all, not merely the number. You presented evidence to the jury that there was insurance and that a claim was paid, correct? My recollection of the record is otherwise. My understanding of the record was that the parties were expressly directed not to discuss. I thought the parties were directed not to talk about the number, but not about the fact that there was insurance. I may be wrong about that, and you want to save some time for rebuttal. Thank you, Your Honor. You might want to look at that again as to whether that evidence was in. I thought it was. Right. Good morning, Your Honors. Theodore Atkinson on behalf of the appellees. Can I have you start out by addressing the collateral source rule? Because, frankly, that's what I struggle with the most in this case. Certainly. So we begin by saying that the collateral source rule was properly applied based upon the fact that this was not a contract action, this was a statutory action, and that that statutory action was closely akin to. . . Let's say it sufficiently sounds in tort for it to apply. Now the question is, in this case, whether it's the same harm or whether it's two separate harms. Right. How was the jury instructed on that issue? The jury was instructed to disregard any evidence of insurance. You said that you should only award harm that resulted from the defendant's breach of its warranty. Right. And not other harms. Standard damage calculation based. . . Are these separable? Is the $300,000 of damage from, I guess, a whale collision? It wasn't a whale, but. . . Whatever it is, is that $300,000 in damage separable from the structural defects on which you based your warranty claim? No. I would say that there is, in fact, the damage, if there was, from a collision, it just gave evidence of the defect. That's not what I'm asking. Okay. I'm asking is it. . . In other words, let's assume that the yacht was built impeccably well. Would you have still had the damages from the whale collision? No. Then it seems to me that they are entitled to an offset for the money that you receive from the insurance company, aren't they? Well, then you get into the question of whether or not. . . See, I thought you were going to argue that they're separate damages. But if you think that they're the same, why isn't the fact that you already got $300,000 for this damage? Based on the collateral source rule, that they cannot get the benefit of our paying premiums over the years. And so this was a benefit that my client paid for and should receive the benefit of. And also, the question of whether or not there was one damage or two is open to speculation. And at the trial, all the evidence, all the competent evidence, was experts who actually inspected the vessel said if there was any damage, it was minor from a strike, and they didn't see any evidence of damage. Well, that's why I thought your argument from your briefs was that, no, there were two separate sets of injury here. One was an injury from a strike from which we got compensation from our insurer. But that wasn't the injury we were suing these guys for. We were suing them because there were structural defects, and those defects cost $1.5 million to repair whether or not we had had a collision. That's not your argument? Well, that would be true. The amount of repairs would have been the same irrespective of whether there was a collision, in other words. Okay. So if that's true, then whether or not there's a collateral source rule doesn't matter because the damages that you're seeking in this case are different than the damages from the collision. Correct. So now you've turned around. Perhaps. But there's only one loss, and that was a defective hull, and that hull had to be replaced whether there was any minor collision damage or not. The question became, well, what was collision damage and what was not collision damage? Our experts opined that it was all defect. It was all manufacturing defect. And that's what I thought your experts said. Right. Okay. So it shouldn't matter that you got insurance to repair something that wasn't a defect caused by the defendant, right? Correct. So are you saying now that the collateral source instruction was given in error but it didn't matter? No. I believe the collateral source rule was correctly applied. The evidence of insurance would just have prejudiced the jury in its determination as to the extent of the damage. But the collateral source rule only applies when you've received compensation from an insurer for the very injury that you're seeking in this lawsuit, right? Correct. Well, that's why I'm thinking that you're shifting your argument during today's presentation because, as I understand it, the insurance policy specifically excluded manufacturing defects, right? Correct. And then the warranty covers the structural defect but specifically excluded collision damage. Then we have to get into the decision-making of the insurance adjuster who decided to pay out on this claim rather than getting dragged into an analysis of what damage is what. And they made an economic decision, we're paying off on this claim and we're walking away. But if you're saying that your theory at trial is that there's one damage and it's caused by manufacturing defects only and that's backed up by your expert, then why give the collateral source instruction at all? Because there was an insurance payment that would just muddle the jury. Correct. Well, and the reason that the instruction was given, I take it, was because the jury was told that there was insurance, right? The insurance came up. They were instructed, we were all instructed not to bring up insurance. But there was evidence in the record that the jury heard that there was insurance. Correct. Not objected to at the time. No, we objected and then it was overruled but then he changed it. The judge left it in for the moment. And then later on he said, don't worry about the insurance stuff, that's my instruction. That's the way I recall it. Okay. I take it that they also had an expert who testified that the damage was caused by the collision? He did not testify as to the source of the damage. He testified strictly as to whether there were manufacturing defects. He never inspected the vessel so there's no way. By inference then, right? There's damage on the yacht. You're saying that that damage was caused by structural defects and you've got an expert to prove it. They're saying that the damage was not caused by structural defects. There's damage so obviously that had to be collision. So in light of the dueling theories and evidence that was presented, we have to still answer the question of whether it was the same harm or two separate harm and that's where the error in the collateral source jury instruction comes in. Well, their expert opinion on the question of damage strictly went to the thickness of the hole. He did not ever inspect the vessel so he could not opine as to what percentage or whether there was a separate harm. So was part of your warranty claim that the hole was not sufficiently thick? Correct, absolutely. So then it seems to me your recovery from the insurance company did go to your warranty issue, didn't it? We believe that the damage would have been there irrespective of whether there was a collision. But I'm asking what the evidence showed. Would you have had, if the hole were thick enough but everything else were not up to warranty, would you have had $1.5 million in repairs? No. Your theory then keeps going back and forth. No, if the hole was sufficiently thick throughout, that was our whole claim, that the hole was not sufficiently thick. It was not properly built. The bulkheads were not attached, et cetera, et cetera. So then weren't your damages from the collision caused by the breach of warranty? No. The damage to the hole was all damage based upon manufacturing defects. To the extent there was ever a collision, all it did was give rise. It pointed out the eggshell nature of the yacht's hull. Okay, so now we get back to the collateral source question. So we have a contract case, a warranty case, in which you've suffered damages, in which you're now saying the damages you suffer all rose from the breach of contract, and somebody else has already given you $300,000 for that breach of contract. Why don't we subtract it? Because this is not a contract action so much as a statutory action and also that the statutory violation, and to the extent you want to call it a contract violation, was akin to tort in that it was willful, as found by the jury. So you agree if this were a pure contract action, we wouldn't apply the collateral source rule? I believe that's correct. And you think this is not a contract action because it's really a tort action? Tort or statute, correct. But doesn't the UCC merely add, and or Song Beverly or any of these things, merely add a term to the contract? It adds penalties to the statutory capability of a buyer to sue its manufacturer, the seller. So it doesn't. I guess I always sort of understood the whole idea of the warranty either expressed or implied, that the UCC adds, as adding a term to the contract, but that's not the case? I suppose that is correct. It is adding terms to a contract, but now they're statutory terms versus contractual terms. And, again, willful violations of those. If we find that the collateral source instruction was given erroneously, what do we do? Well, I would agree that the amount can be simply deducted. The $350,000 would simply be deducted. Retrying this case over that issue would not be practical. And, in fact, my client is now 82 years old and has memory issues, so would not be able to testify as a witness in this case. So it would be prejudicial to us to have that returned. It only goes to the amount of damages, doesn't it? That's correct. Because I'm looking, the jury was aware there was insurance. Right. They were told to disregard it in the collateral source argument, but, okay, I understand. Is there a dispute as to the amount of potential offset? I believe there is two amounts. We would stipulate for the purpose of the appeal and to the trial court below that the higher amount, which is only a $20,000 difference, would apply. Or the district court can sort that out upon remand if we were to go that route. Right. A copy of the check could be introduced. We could resolve it that way. All right. Thank you. Anything further? Thank you very much. Thank you. My time is short, but I don't have that much to say at this point. What I do know is this. The plaintiffs moved to eliminate, obviously, to exclude the insurance policy and any payment of proceeds. At trial, subsequently the court then observed that neither party had brought this up, but I'm wondering, now quoting from the court, I'm wondering if this court should add an instruction that the jury should not consider whether any of the parties have insurance. I'm looking at ER 1377 and 1205, and, well, they seem to have been put in evidence. There seemed to be some evidence in front of the jury that there was insurance. It was in e-mails and in other. That may have been in some of the e-mails, but the jury was expressly directed not to pay attention to whether there was insurance, and that was at the court's suicide. So if they were directed at a retrial, in your view, to pay attention to it, what could they pay attention to other than the amount paid? It's not a matter to pay attention to it, but what it does do is it shows that Alexander Marine's theory of the case is this. The boat hit debris. We understood from the record that it may have been a whale. That at least made it interesting. I'd feel better if it wasn't a whale. I understand that, too. But what you're saying is there's a tremendous variation in testimony, even from the plaintiff's line. But that's what the juries get to sort out. No, but the jury wasn't in a position to assess that testimony. Dave Parker said it was a substantial bump. I mean, he was thrown from his bed. He was jostled. But my question is, you get to put in all that evidence. You get to put in your expert. They put in their expert. What difference does it make to the jury's assessment of liability, not damages, that an insurance company paid a certain amount? If they hadn't paid anything, would you be able to get that in? If they hadn't paid anything, I don't know that that would have come up then as an issue. But, you know, you're saying I'm entitled to get insurance in. So my question is, if the insurance adjuster had said, tough luck, we won't pay, and the plaintiff in this case said, well, that's life, I'll go on and sue on my warranty claim, would you have been able to tell the jury that the insurance adjuster decided not to pay? Obviously, that's not a situation that arose. Of course. I don't know. But it's an interesting question, and very potentially, yes, under the circumstances, because the collateral source rule didn't apply. But at least I'd like to finish the point I'm trying to make, and that is payment of $350,000 is a rather substantial amount. The plaintiffs themselves don't even know whether there was a substantial, you know, debris collision or not. According to the captain of the boat, nothing happened, there's nothing to see, let's move along. Nothing got written into his log. A jury could have actually believed that and then decided, therefore, all of the damage that ensued was as a result of the warranty breach. By contrast, the jury could have easily believed Dave Parker. He said there was a substantial jolt. That was the operative reason why they actually took the boat in for repair, not merely just maintenance. I believe Parker's words were, this was the main event. Okay. So if we now know that Parker should be believed, but not the boat captain who is at the helm, then we also can start to infer from that additional information. The jury could infer from that additional information, including that if there was a substantial hit, that the substantial hit on the boat caused delamination, or what Johnny Chu, the owner of Alexander Marine, testified, there were cascading effects as a result of the damage. There was delamination because when the keel, the extended keel got pulled aside, it got damaged from the strike. Well, then maybe the jury would have- I think we've got your arguments well in hand, counsel. I understand. Do you guys have any additional questions? Can I ask one question? Certainly. When the judge said maybe we should add something having to do, to the charge having to do with insurance, what did you do? What did your clients say you're doing? Well, my clients had objected to, obviously, the motion in limine, and I believe- But in trial. I'd have to check the record to see whether they renewed their objection. Thank you. All right. Thank you very much. Counsel for both sides' arguments in this really interesting case.
judges: Nguyen, Hurwitz, Eaton